**In re Donald W. CRIST, Debtor.**

**MAHAFFEY & GORE, P.C., Plaintiff,**

**v.**

**Donald W. CRIST, Defendant.**

**Bankruptcy No. 86 B 19122.
Adv. No. 87 A 0497.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 18, 1989.

Donald C. Pasulka, Ross & Hardies, Chicago, Ill., for plaintiff.

Donald W. Crist, Blue Island, Ill., pro se.

### MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

Donald W. Crist, debtor, defendant, has moved under Fed.R.Civ.P. 55(c) and 60(b)(3) and (6) [Bankruptcy Rules 7055 and 9024] to have the court vacate its judgment by default entered on January 29, 1988, denying him a discharge. For the reasons stated herein the court will deny Crist's motion.

Mahaffey & Gore, P.C., objected to Crist's discharge on the grounds that Crist had failed to keep and preserve books and records from which his financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3) and had knowingly and fraudulently made a false oath or account in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A).

M & G is an Oklahoma City, Oklahoma, law firm which Crist had retained to quiet title to certain gas and oil leases in Noble County, Oklahoma. In 1983, because of Crist's failure to pay M & G for legal services, M & G sued Crist in the United States District Court for the Western District of Oklahoma and obtained a judgment for $22,936 against him on November 7, 1986. The Oklahoma district court ordered that M & G's lien on Crist's interest in a certain "Morton–Hay No. 1–14 Unit Well"

in Noble County be foreclosed. On December 2, 1986, M & G recorded its judgment against Crist in the Noble County clerk's office.

On December 5, 1986, Crist filed his chapter 7 petition in this court. On May 18, 1987, this court modified the automatic stay to permit M & G to foreclose on the Morton–Hay well.

Crist now moves pro se to vacate the default judgment entered against him on January 29, 1988. In this circuit Fed.R.Civ. P. 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. *See Planet Corp. v. Sullivan*, 702 F.2d 123, 125 (7th Cir.1983).

Crist asserts that M & G obtained the default judgment by fraudulent means. Crist argues that the lien which was foreclosed on the Morton–Hay well was a "fraudulent assignment of a non-existent interest." This may or may not be true, but it is irrelevant to the present motion. Under Fed.R.Civ.P. 60(b)(3) Crist must show that M & G's conduct prevented him from fully and fairly presenting his case in this court in order to justify relief. *U.S. v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup*, 583 F.2d 942, 948 (7th Cir.1978). He must show by clear and convincing evidence that M & G obtained this judgment by fraud, not that M & G obtained the lifting of the stay by fraud, and that the fraud contributed to the entry of judgment against him. *See Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 832 (7th Cir. 1985). If there were fraud in the creation of M & G's lien, Crist should have challenged this court's lifting of the automatic stay, not the entry of a judgment by default in an adversary complaint objecting to his discharge. This court finds and concludes that Crist has not presented sufficient grounds to vacate the judgment by default under Fed.R.Civ.P. 60(b)(3).

M & G had filed this adversary proceeding on June 1, 1987. After two attempts to serve a copy of the adversary complaint, Crist appeared pro se at a status hearing on August 20, 1987 and requested an extension of his time to answer the complaint. The court extended the time to answer to September 21, 1987. On September 24, 1987, a lawyer appeared for Crist and moved for another extension of time to answer the complaint, which motion the court granted. Crist never did file an answer to the complaint.

Status hearings on the complaint were scheduled and held on October 14, 28, and November 30, 1987 at which M & G attended but neither the debtor nor his lawyer ever appeared.

Crist states in his motion to vacate the judgment that at the time of these status hearings he was in a cardiac intensive care unit. Such an assertion does go to the merits of his motion under Fed.R.Civ.P. 60(b)(6) which is a catch-all section meant to provide for circumstances and reasons not covered by any other subsection of Fed.R.Civ.P. 60.

Crist provides no details of his stay in the unidentified cardiac care unit. He provides no dates, hospital names, or names of treating physicians. Moreover, Crist's one sentence statement that he was in an unidentified cardiac intensive care unit when these status hearings were held does not explain why he did not have his lawyer answer the complaint or appear on his behalf at these status hearings.

Also, he does not explain why when he left the cardiac care unit he failed to get in touch with his lawyer, the court, or M & G's lawyer to let them know of the reasons for his absences. Although Crist may have been physically unable to attend these status hearings, this is not an explanation as to why Crist's lawyer failed to appear or why neither Crist nor his lawyer answered the complaint.

Indeed, Crist does not allege that the lawyer who appeared for him at the September 24, 1987 status hearing was somehow remiss in not preparing an answer to the complaint or in failing to inform the court of the debtor's illness. Evidently, these responsibilities were Crist's alone. Crist has failed to submit any clear and convincing evidence for his failure to at-

tend these status hearings or to answer the complaint.

The court did not enter the judgment by default without proper notice to Crist. On December 31, 1987, M & G served Crist and his lawyer its motion for entry of judgment by default for Crist's failure to answer the complaint with a notice setting a hearing on January 8, 1988. Crist's lawyer appeared at that hearing and stated that he had not been in touch with Crist for some time. The court continued the hearing on the motion to January 15 and instructed M & G's lawyer to give Crist direct notice of that hearing.

On January 15, 1988, M & G's lawyer appeared and told the court that he had sent Crist notice of this status hearing both by first class mail and by certified mail. In addition, he said that he attempted to serve notice personally on Crist by a process server. Neither Crist nor his lawyer appeared on January 15, 1988. Crist states that he did not receive the certified letter and was not contacted by a process server. These denials are irrelevant. Crist does not deny that he received the notice sent to him by the court or by M & G's lawyer through first class mail. The court did continue the hearing to January 29. Neither Crist nor his lawyer appeared on that date.

Also, Crist knew that an adversary proceeding had been filed against him. He himself came to court once, and his lawyer once, to ask the court to extend the time to answer the adversary proceeding. Crist's total failure to appear or direct his lawyer to appear at any of the other status hearings scheduled over a four month period is both unexplained and inexcusable. Crist had availed himself of the benefits of the filing of a bankruptcy petition and was under the affirmative obligation to attend the hearing on a complaint objecting to his discharge and to testify, if called as a witness, under Bankruptcy Rule 4002.

M & G's motion for the entry of judgment by default was granted on January 29, 1988 and once again neither Crist nor his lawyer appeared, after due notice was given them. M & G's lawyer informed the court at that time that he had sent an additional notice of the scheduled hearing to a post office box purportedly under Crist's name, on January 21, 1988. Crist admits that he was aware of this hearing, but states that his lawyer was unable to appear on such short notice and that M & G's lawyer unreasonably refused to consent to a more convenient hearing date. If the debtor knew of the hearing date and could not get his lawyer to appear, he himself should have appeared. M & G's lawyer was not obliged to consent to a new hearing date, especially given Crist's repeated unexplained failures to appear at any of the previously scheduled hearings.

It is clear to the court that Crist's behavior in this litigation was irresponsible. He is not entitled to relief under Fed.R.Civ.P. 60(b)(6). This rule as noted in *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir.1984), is to be applied liberally in the default judgment context only in the exceptional circumstance where the events contributing to the default judgment have not been within the meaningful control of the defaulting party or his attorney. In order for a judgment by default to be an effective deterrent against irresponsible conduct in litigation, relief from a judgment by default under Fed.R.Civ.P. 60(b) must be perceived as an exceptional remedy. Crist has not alleged or shown any exceptional circumstances or events which were not in his control which prevented him from answering M & G's complaint or objecting to the motion for judgment by default. Although judgment by default is a harsh result, and the law as stated in *C.K.S. Engineers*, p. 1206, favors trials on the merits, these considerations must be balanced against the need to promote efficient litigation and to protect the interests of all litigants.

It is therefore ordered that Donald W. Crist's motion to vacate the judgment by default entered by the court on January 29, 1988, under Fed.R.Civ.P. 55(c) and 60(b)(3) and (6), is denied.